No. 87-60

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

MONTANA-DAKOTA UTILITIES CO.,
a Delaware Corporation,

> Plaintiff, ~~Petitioner~~
> and Appellant,

-vs-

MONTANA DEPARTMENT OF PUBLIC SERVICE
REGULATION, MONTANA PUBLIC SERVICE
COMMISSION, and MONTANA CONSUMER COUNSEL,

> Defendants, ~~Respondents~~
> and Respondents.

---

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Gordon Bennett, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Hughes, Kellner, Sullivan & Alke; John Alke & George
Dalthorp argued, Helena, Montana
Steven G. Gerhart, Mont-Dakota Utilities, Bismarck,
North Dakota

For Respondent:

Geralyn Driscoll argued, Public Service Commission,
Helena, Montana
Mary Wright argued, Montana Consumer Counsel, Helena,
Montana

---

Submitted: December 4, 1987

Decided: March 11, 1988

Filed: MAR 1 1 1988

Ethel M. Harrison

Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Plaintiff Montana-Dakota Utilities Company (MDU) appeals a December 7, 1986, judgment of the First Judicial District Court, Lewis and Clark County. The District Court upheld the decision of the Montana Public Service Commission (PSC), which reduced the coal expenses used by MDU in setting rates for Montana electric service. We affirm.

MDU raises three issues for our review:

1. Did the PSC err in adopting the "rate of return" method to determine the amount of MDU's coal expense which could be passed through to Montana ratepayers?

2. Did the PSC err in applying the "rate of return" method to MDU's coal expense?

3. Does the record support the PSC decision?

In September of 1983, MDU filed a request with the PSC for a $8,731,439 rate increase, using 1982 as the "test year." As part of its supporting evidence, MDU reported a $15,622,000 expense for lignite coal used by MDU to generate electricity for Montana consumers. The coal expense was paid by MDU to Knife River Coal Mining Company (KRC). KRC is a wholly-owned subsidiary of MDU Resources Group, Inc., of which MDU is a division. The coal expense represented 100 percent of MDU's coal purchases for 1982. MDU's purchases represented 25 percent of KRC's total coal sales for 1982.

Montana Consumer Counsel (MCC), the agency established to represent ratepayers' interests, contended that MDU's coal expense should be reduced by $585,000. MCC's expert witness, Dr. John Wilson, compared KRC to six natural resource companies which sold both coal and oil. Dr. Wilson testified that the six companies' 1982 average rate of return on equity was 15 percent, while KRC's rate of return on equity was 22 percent.

After hearing the arguments, the PSC disallowed $347,000 of MDU's claimed coal expense. The PSC determined that KRC's return rate of 22 percent was too high and "evaded the spirit of regulation." However, the PSC found weaknesses in both MCC and MDU's methods for calculating MDU's coal expense. PSC determined MDU's annual coal expense for ratemaking purposes by applying a hybrid rate of return of 14.565 percent to KRC on owner's equity. To arrive at this percentage, the PSC calculated the rate of return for the six companies suggested by Dr. Wilson and one comparable company, Baukol-Noonan, Inc., suggested by MDU. The PSC then adjusted the rate of return to "normalize" KRC's 1982 test year and also factored in KRC's tax rate. The PSC calculated the rate of return on KRC's total year-end equity, but limited its final adjustment to the 25 percent of KRC's total sales to MDU. Thus, the PSC avoided regulating the price of coal charged by the subsidiary KRC, and yet fixed a fair price for coal expense to be incurred by MDU when considered for ratemaking purposes.

The PSC justified its calculation procedure in Finding 165:

> The classification of coal reserve operations as a nonutility or utility function becomes important to electric ratepayers due to the different ratemaking treatments afforded to the coal fuel expense. It is not clear to the Commission why coal reserves of Knife River Coal Company should be considered a nonutility function with its ratemaking treatment based on comparable profits and prices. Public utilities are required to provide service at the lowest reasonable rate, and the Commission is required to allow rates that reflect the lowest reasonable costs.

Upon judicial review, the District Court found that the record supported the positions of both parties. However, the court concluded that the PSC "rate of return" analysis method was not an abuse of discretion and affirmed the PSC. The District Court noted that recent Montana Supreme Court decisions emphasize "the reasonableness of the _price_ for coal _paid_ by the parent to the subsidiary and not on the propriety of ratebasing the subsidiary." (Emphasis added.) MDU appeals.

Issue 1. Adoption of "rate of return" method.

MDU contends that PSC's rate of return method is flawed because four of the six companies were not truly comparable to KRC. MDU argues that these companies deep-mined bituminous coal in the East, where the high overhead costs squeezed profit margins. MDU asserts that Baukol-Noonan, which earned a higher return than KRC, was the only company truly comparable to KRC.

On review of this issue, we note that the PSC is vested by statute with the duty to supervise and regulate the operations of public utilities and to see that their rates are "just and reasonable." Section 69-3-330, MCA.

In determining what is just and reasonable, the PSC is not restricted to any single formula, if the method followed and the order entered "when applied to the facts and viewed as a whole do not produce an unjust or arbitrary result." Montana-Dakota Utilities Co. v. Bollinger (Mont. 1981), 632 P.2d 1086, 1091, 38 St.Rep. 1221, 1227 (where the PSC reduced MDU's coal expenses from KRC using Dr. Wilson's rate of return method, but this Court remanded the case to the PSC to determine if a factual basis existed for the rate of return method).

The PSC has the power to adopt any non-arbitrary method it chooses. Bollinger, 632 P.2d at 1091. In the instant

4

case, the PSC adopted Dr. Wilson's method to compare KRC's rate of return to the coal industry generally. Perfect comparisons are impossible because coal is not a fungible commodity. Coal has many variables such as density, latent BTU's, sulphur content, debris, extraction costs, and transportation costs. At the delivery site, the coal consumer's boilers must be custom-matched to the coal producer's particular fuel. The comparable which could precisely correlate with the MDU-KRC rate of return does not exist. The PSC used similar comparables, then extrapolated the variables. In doing so, the PSC was simply trying to determine whether the coal expense paid by MDU was reasonable.

The PSC decision conforms to our past holdings on this issue. The PSC adopted a method which was far from perfect, but it was also far from arbitrary. In the balance, we find it was reasonable. We hold that the method was valid on its face and now move to the validity of its application.

Issue 2. Application of the method.

MDU contends that the PSC exceeded its jurisdiction when it applied the rate of return method to KRC's sales, thereby improperly treating KRC as part of MDU. MDU asserts that the PSC must limit its scrutiny to KRC's sales to MDU and may not examine the other 75 percent of KRC sales. MDU further asserts that KRC's most profitable sales were not to MDU, and therefore these other sales distorted the profit margins on sales to MDU.

In reviewing this issue, we note that the "interest of the PSC is to see that MDU does not reap an unfair profit on its investment in its subsidiary by allowing the subsidiary to overcharge the parent for coal when the coal expense will be passed on to the ratepayers." Bollinger, 632 P.2d at 1089.

5

Contrary to MDU's assertions, MDU's coal purchases are at issue, not KRC's coal sales. The key factor in the PSC's examination was the extent to which KRC functioned as an organ of MDU. As the PSC noted: "The vertical integration by MDU into the coal mining business may provide the Company with an opportunity to circumvent effective return regulation by capturing monopoly profits in its affiliated upstream coal operations." Throughout the proceedings, PSC maintained its regulatory focus on MDU, not KRC.

In determining a reasonable rate of return, the PSC made several economic corrections in MDU's favor. The final PSC decision came close to splitting the difference between the $585,000 adjustment advocated by MCC and the zero dollar adjustment advocated by MDU. The final $347,000 adjustment amounted to approximately a 2 percent reduction in MDU's allowable coal expense. The final adjustment had no effect on KRC, but only on MDU.

As applied, the PSC method scrutinized the captive coal transaction to ensure a reasonable rate. "When one of the expenses submitted by MDU is caused by transactions with a subsidiary company, the scrutiny applied by the PSC must be all the more intense." Bollinger, 632 P.2d at 1089. We hold that the PSC's "rate of return on equity" method was properly composed and applied.

Issue 3. Support in the record.

MDU contends that the PSC's decision is not supported in view of the whole record. MDU argues that its evidence was more probative. MDU asserts that the price KRC charged MDU for its coal was competitive and that MDU could not acquire cheaper coal from any other source. Furthermore, MDU asserts that the contracts to sell coal to MDU were negotiated in an arm's length transaction by a third-party

independent utility. MDU concludes that the PSC actions reflected a predetermined decision that PSC was going to reduce MDU's coal expense regardless of the evidence in the record.

In reviewing this issue, we note:

> . . . The Commission is the judge of the facts and the court only decides questions of law. [Citation omitted.] In deciding questions of law, this Court may determine whether the PSC acted arbitrarily and unreasonably without sufficient evidence to support its findings, or exercised its authority unreasonably, or set the utility rates so low that they are confiscatory and deprive the utility of its property without due process of law. [Citation omitted.] This Court on appeal cannot substitute its judgment for that of the PSC. [Citation omitted.]

Mountain States Telephone & Telegraph Company v. Department of Public Service Regulation, Montana Public Service Commission, et al. (Mont. 1981), 624 P.2d 481, 485, 38 St.Rep. 165, _____.

"Our inquiry is limited to determining whether substantial evidence was presented to support the PSC's decision or if the decision was unjust or arbitrary." The Montana Power Company v. Dept. of Public Service Regulation, Mont. Public Service Commission, et al. (1983), 204 Mont. 224, 229, 665 P.2d 1121, 1123 (where the PSC reduced MPC's coal expenses from its wholly-owned subsidiary using Dr. Wilson's rate of return method, and this Court affirmed on the basis that substantial evidence supported the PSC's decision).

Essentially, MDU argues that the decision of the PSC is not sustainable because some of the evidence in the record supports MDU's position. MDU has misstated the burden of proof. "If a party contends that the order of the PSC is

7

unreasonable, it is creating a fact issue, and under § 69-3-402(4), MCA, that party has the burden of proof before the reviewing court on the issue. If it is contending that the order or decision of the PSC is unlawful, the appealing party has the burden to show PSC abused its discretion." Montana Dakota Utilities Co. v. Montana Department of Public Service Regulation, et al. (1986), 725 P.2d 548, 553, 43 St.Rep. 1648, 1653-1654.

MDU has failed to show how the PSC decision was unreasonable or arbitrary. MDU presented no evidence which tracked its own coal expenses by market price. We note that MDU's coal purchases from KRC were an affiliated transaction, where coal is bought and sold in a vertically-integrated market. MDU had no market incentive to pay KRC the lowest possible price. When MDU paid KRC, MDU was paying itself.

Similarly, MDU did not present any evidence of fair market prices from comparable coal companies. The market price method may actually be less quantifiable than the rate of return method because coal is a commodity with fluctuating prices. In either case, the selection of methods lies squarely within the discretion of the PSC:

> We did not hold [in Bollinger] that the PSC must use a "market price" method if a competitive marketplace can be established; the choice of methods is left to the PSC. In the instant case, the PSC chose to apply a "rate of return" method in an effort to determine the reasonableness of the price paid by MPC for Western Energy coal.

MPC, 665 P.2d at 1123.

Alternatively, MDU argues that the rate of return on equity must be based in part on the fair market value of MDU coal assets and not the depreciated original cost of the coal. This argument is flawed due to the great difference

8

between the current price of coal and the original price of the coal reserves. In exercising its authority to determine a rate of return for MDU, the PSC essentially concluded that MDU's proposed return on assets method, valuing coal reserves at current market prices, would result in a rate of return in excess of what the PSC determined to be reasonable.

In conclusion, we hold that the PSC's method of reducing MDU's coal expense is supported by substantial, credible evidence. The PSC used both Dr. Wilson's and MDU's comparables. The PSC's final calculation represented a compromise. In both Bollinger and MPC, the issue turned on the sufficiency of evidence, and not on the superiority of method. PSC's summary of evidence tracks in its conclusion. "So long as the record supports the [PSC's] decision, that judgment must stand." MPC, 665 P.2d at 1124.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

_____
Hon. C. B. McNeil, District
Judge, sitting in place of Mr.
Justice L. C. Gulbrandson

9

Mr. Justice Fred J. Weber dissents as follows:

While I substantially agree with the principles of law contained in the majority opinion, I dissent from the application of the principles to the facts of the present case. Rate cases are extremely difficult for our appellate review because of the complexity of the information presented, the extensive testimony, and also because the Public Service Commission (PSC) sets forth hundreds of findings of fact and many conclusions, making it difficult to analyze or distinguish. In the present case (MDU II), I contend that there is a superficial adherence to the opinions of this Court, but in actuality a fundamental disregard of the past holdings. Let us consider the two most recent cases involving similar issues.

Montana-Dakota Utilities Co. v. Bollinger (Mont. 1981), 632 P.2d 1086, 38 St.Rep. 1221, (MDU I) was decided in 1981. In MDU I we vacated the judgment of the district court and remanded the case to the PSC for additional hearings. MDU I involved the same utility company, the same Knife River Coal Company, and the same question of rate fixing with regard to coal sold by Knife River, MDU's wholly owned subsidiary. We there chose not to accept the rate of return theory as presented by the Consumer Counsel through the expert Dr. Wilson. We stated as follows:

> In view of the necessity for a rehearing, the PSC should again consider if there is an independent, competitive market which establishes a going market price for coal, from which the PSC can determine if the price MDU pays Knife River for coal is reasonable. While it is true that the PSC found that absolute comparability between coal prices impossible to determine, it appears to this Court that the prices paid by a number of other companies to Knife River for two-thirds of its coal production is

> evidence of a competitive market for comparison to
> the Knife River price paid by MDU. In addition,
> there was evidence of prices charged by other
> companies in the competitive area. If the PSC
> finds that the present evidence is insufficient, it
> appears appropriate that the PSC require the par-
> ties to submit additional evidence . . .
>
> As a matter of justice, it appears to this
> Court that it might be better for the PSC to use a
> marketplace cost of coal approach, if it can obtain
> sufficient facts for its determination, rather than
> using the rate of return method with all of its
> difficult theories and computations. While the PSC
> does have the right to choose the method followed,
> this Court did not find a factual reason for the
> summary rejection of the marketplace cost of coal
> approach. (Emphasis supplied.)

MDU I, 632 P.2d at 1091-92. We therefore reversed the PSC determination because there was no factual reason given for the summary rejection of the marketplace cost evidence submitted by MDU.

With MDU I in mind, let us consider the next case, Montana Power Co. v. Department of Pub. Serv. (1983), 204 Mont. 224, 665 P.2d 1121, herein referred to as MPC. The argument between the parties in MPC was similar to that in MDU I. The MPC presented extensive evidence by Arthur D. Little, Inc., a firm of national prominence in the field of coal supply contracts. That firm sought and received bids from nine companies and determined that the price of coal charged by the MPC subsidiary was the lowest price available to MPC's Billings plant. In referring to MDU I, this Court concluded that we did not hold that the PSC must use a market price method if a competitive marketplace can be established, but that the choice of methods was left to the PSC. As a result the Court did not consider whether there was substantial evidence to support the market price method. Instead, it analyzed whether there was substantial evidence to support the rate of return method. The standard which it applied was

11

whether the PSC acted arbitrarily and unreasonably without sufficient evidence to support its findings. The Court then pointed out that the MPC did not challenge or oppose the values submitted by the Consumer Counsel through Dr. Wilson, its expert. As a result it then concluded that the record was sufficient to support the decision made by the PSC and no challenge would be allowed on appeal. A vigorous dissent was prepared by Justice Harrison pointing out that there was an arbitrary and capricious decision made by the PSC. I wish to emphasize that in MPC, the rule applied was that no argument could be made by MPC, because it had failed to present evidence at the administrative level opposing the expert evidence submitted by the Consumer Counsel.

The present case is a continuation of the conflict between of marketplace cost of coal approach as compared to rate of return approach. Here it is important to consider the nature of the evidence submitted by both MDU and the Montana Consumer Counsel. The uncontradicted evidence submitted by MDU established that there were not less than six major generating stations in the general area and that there were five different coal mines supplying coal to the stations. As a result those purchasing coal from Knife River had a number of other alternatives. Other witnesses testified that there is a very competitive market for the supplying of Northern Plains lignite coal in this area. In addition to Knife River there are four companies, each of which operate mines that have the capacity to produce in excess of one million tons per year of Northern Plains lignite, the same type of coal produced by Knife River. These were Consolidation Coal Company, now wholly owned by Dupont, North American Coal Company and its subsidiary, Falkirk Mining Company, and Baukol-Noonan, Inc. In addition North American was in the process of developing a new mine

12

through another subsidiary. There were also several other operators producing smaller quantities basically for domestic markets. The total output of lignite coal from this area in one year was close to eighteen million tons. Detailed evidence was presented of the coal prices charged by these various operators. In addition, evidence was presented on the approximately seventy-five percent of Knife River's coal which was sold on the marketplace to parties other than MDU. In substance, MDU presented more than sufficient evidence to prove the competitive market price for coal in the Knife River vicinity. In my view, the evidence was clearly sufficient to meet the standard outlined in MDU I.

In addition, I would emphasize that no contrary evidence was submitted by any party. At that point, if the rationale of MPC were applied, it would seem that the PSC could have been required to consider in detail and explain in detail its reasons for refusing to accept the uncontradicted evidence, and to determine the coal price on a market price theory. That seems particularly true in view of our holding in MDU I where we suggested as a matter of justice that it appeared that it might be better to use the marketplace cost of coal approach. MDU I, 632 P.2d at 1092. However, I recognize that that statement was weakened by MPC when we stated that the choice of methods was left to the PSC.

However, I suggest that while the choice of methods may be left to the PSC, it should not be allowed to make an arbitrary decision denying the use of the marketplace cost of coal. Instead of pointing out any shortcomings in the evidence submitted by MDU, the PSC quoted from a Department of Justice report, "Competition in the Coal Industry," which stated that in practice, identification of the appropriate competitive prices is virtually impossible. That quote emphasizes that coal prices are not some broad national

13

aggregate but are tied to very specific locations and quality factors. It further emphasizes that it may prove difficult to estimate an appropriate set of market prices to use. That is not a justification for refusing to consider the evidence submitted by MDU. That is a general statement which pertains to the comparison of coal prices on a broad or national scale. It does not appear determinative when we have specific price figures offered for the sale of coal of the same type and quality in the specific area, with the only differing factor being transportation costs. I conclude that as was true in MDU I, the Court cannot find a _factual_ _reason_ for the summary rejection of the marketplace cost approach and the judgment should therefore be vacated.

As a result of my foregoing analysis, I disagree strongly with the conclusions in the majority opinion that MDU presented no evidence which tracked its own coal expense by market price and that MDU did not present evidence of fair market prices from comparable coal companies. In the present case, the evidence presented by MDU of the seventy-five percent of the coal sold by Knife River to other parties is substantial evidence of such coal expense as only twenty-five percent was sold to MDU itself. As pointed out in MDU I, it should appear to this Court that the prices paid by a number of other companies to Knife River for two-thirds (which has now become seventy-five percent) of its coal production is evidence of a competitive market for comparison of the Knife River price to MDU. I also disagree with the conclusion that MDU failed to present evidence of fair market prices from comparable coal companies as there is substantial evidence of that type which is unrebutted in the record.

I further disagree with the conclusion that there is substantial evidence to support the rate of return method as determined by the PSC. In contrast to MPC where the utility

14

failed to present any rebutting testimony to that testimony of Dr. Wilson, in the present case, MDU presented substantial evidence to show that there were a number of problems with the testimony of Dr. Wilson. The PSC pointed out in its own findings that the inclusion of eastern mining operations which mine bituminous coal and have characteristics significantly different from Knife River operations posed significant problems in determining if they are comparable coal companies. As a result the PSC concluded that it was reasonable to check such admittedly imperfect data by looking at other areas of the economy for profitability figures. The response of the PSC to the proof of the inadequacy of the Dr. Wilson evidence was to use as comparable companies, other companies which no one contended were comparable. These included Ashland Oil, Atlantic Richfield, Houston Natural Gas, Mobil, Kerr-McGee, and Occidental Petroleum, most of which were oil companies. The use of such companies which no one contended were comparable in itself appears to be arbitrary. Further, the excess profit calculation performed by Dr. Wilson considers the profitability of the entire Knife River Coal Company. The most profitable sales by that company were not the sales to MDU. As a result, there was an improper scaling back of the earnings of Knife River. As contended by MDU, the effect of this methodology is to capture a portion of the Knife River profits from sales to parties other than MDU and use them to subsidize the MDU electric customers.

The effect of the calculation of the rate of return method by the PSC is the indirect regulation of Knife River. Apparently that is the theory which the PSC set forth in Finding 165 which is quoted in the majority opinion.

In MDU I, the majority opinion discussed the California approach of rate determination (which Justice Sheehy

15

earnestly advocated in his dissent) and in refusing to apply that approach stated as follows:

> Perhaps the PSC, in setting the rate of return level, was relying upon the theory prevalent in the "California approach" to the issue at hand. Under this approach, the subsidiary is treated not as an independent entity but as part of the utility for ratemaking purposes. The theory underlying this position was discussed in Washington Water Power v. Idaho Public Util. (1980) . . .
> We note, however, that the majority of those cases using this approach involve the Bell Telephone System and its manufacturing subsidiaries. These subsidiaries sell virtually all their manufactured products to the parent, Bell Telephone - a fact which is materially different from the present situation where the bulk of Knife River coal (a depletable natural resource) is sold to customers other than its parent. . . . <u>Such an approach should not be deemed applicable in this instance.</u> (Emphasis supplied.)

<u>MDU I</u>, 632 P.2d at 1090-91. I frankly am not clear of the effect of the majority opinion on the "California approach." From the statements made by the PSC, it seems clear that it intends to pursue such an approach in its rate determination. If the intention of the majority opinion is to overrule this determination in <u>MDU I</u>, because of its extreme significance on all similar cases, it should be discussed in detail and the rationale explained. I personally do not find any argument presented which persuades me that the "California approach" is a necessary part of the rate determination process for Montana. There of course has been no such determination by the legislature.

Under the factual analysis as above set forth, I conclude that it is not appropriate to affirm the PSC and the order of the District Court which in turn affirmed the PSC. I would remand this case for further proceedings.

Justice

16